CABELL and BROOKE, J.,
concurred in the opinion that the judgment should be affirmed, without costs.
TUCKER, P.
This is an action arising out of a transaction between the plaintiff in error and the branch bank of Virginia at Charleston in Kanawha county, brought under the provisions of the act of March 19, 1832, entitled 1 ‘an act authorizing suits against the branches of banks in this commonwealth in certain cases.” The process is not in the record, not having been made a part thereof by oyer: but the declaration commences with shewing that the president and directors of the said branch bank were summoned to answer the plaintiff of a plea of trespass on the case; and it proceeds accordingly throughout to complain of them, to set forth their indebtedness for money lent to or laid out for them, or lent to or laid out for the president, directors and company of the bank of Virginia, at the request of the defendants, in considera-1iou whereof the said defendants promised to pay &c. and lays the breach that they did not pay.
This action presents a perfect anomaly. It is brought against the agents of the bank of Virginia (for such the president and directors of the branch bank are) instead of against the bank itself: it is brought against a board constituting the president and directors of the branch, who are not sued in their individual character, and yet are not a corporation capable of being sued. It demands a judgment which is to be rendered against this body of president and directors, and yet is to be enforced by execution against the property of the corporation ‘(known to the law) of the president, directors and company of the bank of Virginia; and thus, while it proceeds against a quasi corporation, which is no corporation, and asks for judgment against it on its own alleged indebtedness, it looks to the enforcement of that judgment against the property of the Virginia bank, by an execution which, if it correspond with the judgment, never can command the officer to levy on one particle of its propertj'.
All these embarrassments arise from a want of perspicuity in the act, and from construing it rather according to its letter than its spirit. Can it be conceived to have been the legislative design to change, without a motive, the charter of the bank, and to repeal the provision which gave it its name of “the president, directors and company of the bank of Virginia,” and directed that by that name it should sue and be sued? Can it have been designed to authorize a suit against a quasi corporation, having no legal name by which to be sued, and having in fact no legal existence as a corporate body; and this too without prescribing by what name they should be sued? Can it have been designed to break down, without a motive, that symmetry in legal proceedings which requires that the execution shall be supported by the judgment, the judgment by the pleadings, and the pleadings by the demand? Can the legislature have designed, either that on a judgment against the branch bank, in which the mother bank would not be named, an execution should issue against the mother bank, or that the officer of the law, with an execution not directed against the property of the mother bank, should, without the command of the process, proceed to levy upon it? I cannot think so. The design of the act was merely to authorize suits against the bank, on transactions with a branch bank, in that county in which the branch was situated, and to make the service upon its officers equiv *660 alent to service' on the ^officers of the mother bank at Richmond. The act must be construed in conformity with this intention. In doing so, we must not on the one hand disregard the charter principle that the bank must be sued by its corporate name, nor imagine on the other that a board of agency shall be sued by no name at all recognized by the law. Construe the act by its letter, and it provides, it is true, that the branch bank may be sued. But how sued? by what name sued? It cannot be sued as a corporation, for it is none. It cannot be sued by the name of the president and directors of the branch bank, for it has no legal name. But the branch bank may be sued by issuing process in the county where it is established, and serving it as the law directs, on its president or cashier. This is what is meant by suing the branch bank. It consists in instituting the proceeding in that county where the branch is established, and giving notice to its officers to appear and defend the suit. But with this it is perfectly compatible that the process, the declaration, and the subsequent proceedings should be against “the president, directors and company of the bank of Virginia.” .No action could be maintained otherwise. For there can be no cause of action against the branch bank as such. Being but an agent, — being no corporation, its liability is the liability of the mother bank. The act itself contemplates no liability of the branch as such. Its language is, “any person &c. having any controversy with any of the banks, which shall have arisen out of any transactions between such person &c. and any one of the branches.” The controversy then is with the bank itself, though the transaction was with the branch. The bank, and the bank alone, as the corporation, is liable: the demand must be against it; the contract must be laid with it, for such it truly is; the implied promise must be laid as made by it, and the breach must correspond. Then will follow in symmetrical *order the pleadings, the verdict, and the judgment ; upon which last, such an execution as the statute contemplates will issue against the goods and chattels of the bank, wherever found. Thus every thing is harmonious and consistent with legal principles, while the present action is in irreconcilable conflict with them all.
I am of opinion to affirm the judgment, without costs.
Judgment.affirmed, without costs.